UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANDREW SMALLS,

                            Plaintiffs,

        -against-

THE CITY OF NEW YORK,
POLICE OFFICER RICHARD COLLINS,
POLICE OFFICER DAVID TETA,
POLICE OFFICER ERIC CABRERA,
POLICE OFFICER ALVAREZ,
POLICE OFFICER JESSICA ALVARADO,
and SERGEANT BRIAN STAMM,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**


**PLAINTIFF DEMANDS
A TRIAL BY JURY**

       Plaintiff Andrew Smalls, by his attorneys, Lumer & Neville, as and for his

Complaint, hereby alleges as follows, upon information and belief:


                 **PARTIES, VENUE and JURISDICTION**

       1.     At all times hereinafter mentioned, plaintiff Andrew Smalls was an

adult male resident of Queens County, within the State of New York.

       2.     At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

       3.     At all times hereinafter mentioned, defendants Police Officer Richard

Collins, Police Officer David Teta, Police Officer Eric Cabrera, Police Officer Alvarez, Police Officer Jessica Alvarado, and Sergeant Brian Stamm were members of the NYPD. and employed, retained, trained, and supervised by New York City. The individually named defendants are sued herein in their official and individual capacities.

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

5.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where plaintiff and defendant City of New York reside, and where the majority of actions complained of herein occurred.


## RELEVANT FACTS

6.      On May 20, 2006, in the early morning hours, plaintiff Andrew Smalls was lawfully present at or around 81-05 Rockaway Beach Boulevard, in Queens County, New York.

7.      While plaintiff was outside and in front of 80-105 Rockaway Beach Boulevard, the defendants encountered and confronted him.

8.      The plaintiff Andrew Smalls was not engaged in any illegal conduct at the time the plaintiff was confronted by the defendants, nor would it be reasonable for the defendants to have believed he was engaged in any unlawful or suspicious activity.

9.      At the time the defendants confronted and subsequently arrested plaintiff, the defendants did not have an arrest warrant naming plaintiff.

10.     Although defendants lacked probable cause to arrest plaintiff, they nonetheless seized, detained, and handcuffed the plaintiff.

11.     At the time and place mentioned above, the defendants violently grabbed plaintiff and struck plaintiff's head against a wall. There was no basis to utilize any level of force, much less the force actually employed, and it was not reasonable for the officers to believe such force was necessary.

12.     Plaintiff was searched at the time of his arrest. No contraband of any sort was recovered from plaintiff nor did he actually or constructively possess any contraband.

13.     The plaintiff was eventually transported in handcuffs from the above-mentioned arrest location to a local area NYPD station house or PSA, where he was further detained and processed.

14.     While plaintiff was unlawfully imprisoned by the defendants, defendants completed arrest paperwork which, upon information and belief, alleged that defendant Richard Collins had seen plaintiff Andrew Smalls in possession of an illegal .38 caliber pistol on the roof of 81-05 Rockaway Beach Boulevard, and that said pistol had been recovered in the area where the plaintiff had been arrested.

15.     All of the above-mentioned  allegations were false, and the defendants knew them to be false at the time they made these statements.

16.     The defendants forwarded these false allegations to the Queens County District Attorney ("QCDA") or the New York City Criminal Court ("NYCCC") in order to

3

justify the arrest and to persuade the QCDA and/or NYCCC to commence and/or continue the plaintiff's criminal prosecution.

17.     The defendants knew and understood that the QCDA and the NYCCC were relying on the truthfulness of defendants' claims and statements in order to evaluate whether to commence a criminal prosecution against the plaintiffs.  Defendants were aware that the QCDA and the NYCCC assumed  that all of the factual statements, claims and allegations that defendants relayed to the QCDA and the NYCCC  were truthful in all material respects.

18.     Defendants further knew and understood that they were obligated to provide any and all exculpatory information to the QCDA and the NYCCC,  and that defendants were expected to turn over to or otherwise provide the QCDA with all material information concerning the arrest, regardless of whether it was inculpatory or exculpatory.

19.     Plaintiff was held in NYPD custody, and then transported to central booking, where he was held until he appeared for arraignment before a Queens County Criminal Court Judge.  At his arraignment, plaintiff was charged with Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Criminal Trespass in the First Degree.

20.     The criminal court set bail which plaintiff could not post and he was thereafter incarcerated in the municipal defendant's custody.

21.     Shortly thereafter, plaintiff was indicted based on the false testimony of at least some of the defendants, and the prosecution continued in State Supreme Court,

4

Criminal Term.

22.     A pre-trial suppression hearing was held on or about February 20, 2008.  Defendant Police Officer Richard Collins testified for the prosecution during the suppression hearing. Collins continued to maintain the same fabricated story he and the defendants had originally concocted, and lied that he had observed plaintiff on the roof with the handgun. Both of these allegations were false.

23.     As a result of Collins's continuing fabrication of evidence and malicious conduct, the suppression motion filed by plaintiff's criminal defense counsel was denied on or about April 29, 2008.

24.     The case proceeded to trial in or about May of 2008.

25.     During the trial, defendants Collins and Teta testified for the prosecution, where they again claimed that plaintiff had been in possession of an illegal firearm on the roof, and that plaintiff made an inculpatory statement.  Such testimony was false in all material respects.

26.     On June 4, 2008, the plaintiff was convicted on all counts.

27.     Plaintiff was sentenced in New York State Supreme Court, Queens County on November 12, 2008 to a determinate period of incarceration of twelve (12) years, with five (5) years' post-release supervision.

28.     Plaintiff filed a timely Notice of Appeal following his sentencing hearing on November 12, 2008.

29.     Plaintiff appealed his convictions, and on April 26, 2011, the New York

State Supreme Court, Appellate Division, Second Department, in *People v. Andrew Smalls*, 83 A.D. 3d 1103, 922 N.Y.S. 2d 461 (2011), vacated the conviction and dismissed the weapons charges, and remanded the case for the purpose of resolving the one trespass count.

30.   Upon information and belief, sometime in 2012, the last charge involving an alleged criminal trespass by the plaintiff was dismissed.

31.   Each of the defendants was aware that Collins and Teta had lied and were continuing to lie about finding plaintiff on the roof, as well as his possession of a handgun and making an inculpatory statement.

32.   At no time during the arrest, or the years in which plaintiff was being criminally prosecuted, or incarcerated following his conviction, did Collins, Teta, or any of the defendants take any steps of any sort to intervene in plaintiff's false arrest and wrongful prosecution, or to correct or remedy these false statements in any fashion.

33.   At no time did defendants have probable cause to seize, detain or arrest the plaintiff, nor was it reasonable for the defendants to believe that such cause existed.

34.   Despite the absence of probable cause and a lack of evidence indicating criminal conduct by the plaintiff, the defendants proceeded with the arrest of the plaintiff herein.  Defendant NYC and the individual defendant officers, in their official and personal capacities, did unlawfully arrest the plaintiff in order to increase the arrest statistics for their unit.

35.   At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the illegal, unlawful and

6

unconstitutional conduct engaged in by their fellow officers against the plaintiff.

36.     The defendants' illegal, unlawful, and unconstitutional actions against the plaintiffs in this matter were carried out in accordance with an existing plan or policy created  or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

37.     More precisely, under the above-mentioned plan or policy, New York City Police Officers would routinely arrest persons, regardless of whether there was any factual basis for the charges.  The arresting officer(s) would then make false statements of fact as to seeing contraband in plain view or otherwise in the possession of each of the persons arrested.

38.     The purpose of this plan or policy was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

39.     In addition, the plaintiff herein alleges that members of the New York City Police Department are evaluated, at least in part, on the basis of their "activity," which is measured by the number of arrests made, and other, similar criteria.  Thus, members of the NYPD routinely make arrests and engage in other police conduct  without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

40.     The above-mentioned plan or policy has been kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrests, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient

evidence to justify the arrests, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the imposition of charges or continued prosecution if charges were filed.

41.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

42.     Plaintiff repeat the allegations contained in paragraphs "1" through "41" above as though stated fully herein.

43.     Defendants willfully and intentionally seized, searched, detained and arrested plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

44.     The defendants also fabricated evidence through the making of false and misleading factual statements, which were forwarded to the QCDA and/or the NYCCC, and which resulted in the deprivation of plaintiff's liberty.

45.     By so doing, the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of his person and property, excessive force, and denial of a fair trial through the fabrication of evidence, and malicious prosecution, in violation of plaintiff's rights under the United States Constitution.

46.     By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiff to suffer physical and emotional injuries, mental anguish,

8

incarceration and the deprivation of liberty, and the loss of plaintiff's constitutional rights.

## SECOND CAUSE OF ACTION

47.     Plaintiff repeats the allegations contained in paragraphs "1" through "46" above as though stated fully herein.

48.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the New York City Police Department ("NYPD").

49.     The municipal defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, and other blatant violations of the United States Constitution and the established rules and regulations of the NYPD. Despite ample notice of inadequate supervision, Defendant Municipality New York City took no steps to ensure that reasonable and appropriate levels of supervision would be put into place to reasonably ensure that NYPD members would execute their duties in a lawful and proper manner, including, but not limited to, the use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

50.      Defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted,

condoned, and otherwise created, through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

51.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant, The City of New York. The individual defendants, in their capacities as New York City police officers, acted pursuant to customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD; all the individual defendants acted under the direct supervision of higher-ranking officers of the NYPD.

52.     The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

a.     Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

b.     Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

c.     Retaliating against officers who report police misconduct; and

d.     Failing to intervene to prevent the above-mentioned illegal and unlawful practices when such intervention should reasonably follow any misconduct, especially when said misconduct was·known to supervising and policy-making officials.

10

53.     In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated: "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged."

54.     Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

55.     It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD, and that the City of New York has been deliberately indifferent to the risk that the inadequate level of supervision of New York City Police officers would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular herein.

56.     By reason thereof, Defendant Municipality of the City of New York and the individual defendants have violated Title 42 U.S.C. §1983 and caused the plaintiff to suffer emotional injuries, mental anguish, incarceration the deprivation of liberty, and the loss of the plaintiff's  constitutional rights.

## DEMAND FOR A JURY TRIAL

57.    Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.


WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second cause of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv.    such other relief as the Court may deem just and proper.


Dated:   New York, New York
        April 10, 2014

                  LUMER & NEVILLE
                  Attorneys for Plaintiffs
                  225 Broadway, Suite 2700
                  New York, New York 10007
                  (212) 566-5060


                            /s/
        By:   _____
                  James C. Neville (JN-2128)